RECEIVED
IN MONROE, LA
JUL 2 - 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| RILEY F. CLARK, ET AL | CIVIL ACTION NO. 07-0321 |
| VERSUS | JUDGE ROBERT G. JAMES |
| AMSOUTH BANCORPORATION, ET AL | MAG. JUDGE MARK L. HORNSBY |

## RULING

Before the Court is a Motion for Summary Judgment [Doc. No. 21] filed by Defendants, the Regions Bank (successor to named Defendant "AmSouth Bank"), Regions Financial Corporation (successor to named defendant "AmSouth Bancorporation"), and Penny W. Hale (employee of Regions Bank) ("Mrs. Hale") (collectively "Defendants"), against Riley F. Clark ("Mr. Clark") and Marie H. Clark ("Mrs. Clark") (collectively "the Clarks"). The Clarks have alleged claims of negligence, breach of fiduciary duty, detrimental reliance, and negligent misrepresentation, claiming that they suffered damages because the Defendants, among other things, failed to inform them that their monthly withdrawals from Mr. Clark's Individual Retirement Account ("IRA") were depleting the principal. Defendants move for summary judgment, arguing that there is insufficient evidence to support any of the Clark's claims. For the foregoing reasons, Defendants' Motion for Summary Judgment [Doc. No. 21] is GRANTED.

I.  **FACTS AND PROCEDURAL HISTORY**

On February 27, 1998, Mr. Clark retired from his job as a salesman at Stuart C. Irby

1

Company. That same year he used about $250,000 to open an IRA with Deposit Guaranty and Trust Bank, successor by merger to named Defendant AmSouth Bank. Under the IRA, Mr. Clark was designated as the "grantor," Deposit Guaranty and Trust Bank was designated as "trustee," and Mrs. Clark was designated as beneficiary.

From the creation of the IRA until January 2006, Mr. Clark received monthly distributions from the IRA. A few years after the IRA was formed, the amount of the distributions was increased. In addition to his monthly withdrawals, Mr. Clark made at least one other one-time withdrawal to remodel his kitchen.

Sometime before January 2006, Defendants advised the Clarks that AmSouth Bank was reorganizing its funds, and that as a result the Clark's would be charged a higher fee for Defendants' services. Upon receiving this news, the Clarks requested that their IRA be rolled over to Edward Jones. According to the Clarks, when the IRA was transferred they discovered that it had much less money than they anticipated, i.e., $122,629.69.

The Clarks have alleged claims of negligence, breach of fiduciary duty, negligent misrepresentation, and detrimental reliance.

Defendants have moved for summary judgment on all claims.

## II. LAW AND ANALYSIS

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the Court of the basis for its motion by identifying portions of the record which highlight the absence

of genuine issues of material fact. Topalian v. Ehrmann, 954 F.2d 1125, 1132 (5th Cir. 1992). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. Id. The moving party cannot satisfy its initial burden simply by setting forth conclusory statements that the nonmoving party has no evidence to prove its case. Ashe v. Corley, 992 F.2d 540, 543 (5th Cir. 1993).

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. Norman v. Apache Corp., 19 F.3d 1017, 1023 (5th Cir. 1994). The nonmoving party must show more than "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. Anderson, 477 U.S. at 255.

Defendants have moved for summary judgment arguing that there is no genuine issue of material fact. According to Defendants, they provided the Clarks with complete and accurate information about the IRA, and that the IRA in fact exceeded its own benchmarks during the over seven years that it was maintained by Defendants. Defendants further contend that they should not be held liable for the Clarks' lack of due diligence and ordinary prudence in managing their own financial affairs. The Clarks respond that there are several genuine issues of material fact that are sufficient to establish their causes of action against Defendants.

First, the Clarks argue that there is a genuine issue of material fact whether Defendant

3

informed the Clarks "at the time that they opened the IRA account . . . that [their] withdrawals would touch the principal." Plaintiffs Opposition at 2 [Doc. No. 25]. According to their depositions, the Clarks do not recall being informed that Mr. Clark's monthly withdrawals from the IRA would deplete the IRA's principal.

Although the Clarks do not recall the details, the undisputed evidence establishes that when the IRA was created the Clarks were informed that the IRA's principal could be depleted. When his IRA was created, Mr. Clark signed a Grantors Approval authorizing the bank to invest and manage his funds. [Doc. 21, Exh. 1(d)]. The document informed Mr. Clark that the investment was not FDIC insured, not guaranteed by the bank, and "involv[ed] investment risk, including the possible loss of principal." Id. Thus, Mr. Clark was informed that his IRA, even without his monthly withdrawals, carried a possible loss of principal. Although Mr. Clark testified at his deposition that he does not recall signing some of the documents associated with his IRA, he is presumed to know their contents because he admits that it is his signature on those documents. Adams v. Commercial Nat. Bank of Shreveport, No. 27,360 (La. App. 2d Cir. 1995); 661 So.2d 636, 640 ("[A] person signing a written contract is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, that no person explained it to him, or that he did not understand it.").

The Clarks next argue that Defendants' Motion for Summary Judgment should be denied because there is a genuine issue of material fact whether they were informed after the IRA was formed that Mr. Clark's withdrawals were depleting the principal. In her deposition, Mrs. Clark indicated that she received some documents by mail from Defendants, but that during the over seven years Defendants maintained her husband's IRA she does not recall receiving annual

4

statements and 5498 forms that would have revealed the rate at which Mr. Clark's withdrawals were depleting the principal. <u>Mrs. Clark's Deposition</u> at pp. 24-25 [Doc. No. 25-6].

Defendants respond that the undisputed evidence established that the annual reports and 5498 forms were duly delivered to the Clarks and that Mrs. Clark's self-serving claim that she does not remember receiving annual reports is insufficient evidence to create a genuine issue of material fact.

In Louisiana, mail properly addressed, stamped, and mailed is presumed to be duly delivered to the addressee. <u>Ottermann v. Ganus</u>, 455 So.2d 1385, 1387 (La. 1984); <u>Morill v. K. & M. Servs., Inc.</u>, 524 So.2d 263, 264 (5th Cir. 1988). Self-serving denials, without more, are insufficient to rebut this presumption. See <u>Ottermann</u>, 455 So.2d at 1387 (La. 1984).

Defendants have presented evidence that they duly delivered annual reports to the Clarks. The Clarks have lived at their current address for thirty-seven years and admit receiving at this address various documents and information from Defendants, including the bank's annual prospectus and 1099R reporting forms.[1] Although Mrs. Clark did not recall receiving the annual reports for Mr. Clark's IRA, she also admitted that she did not always open mail addressed to him. <u>Mrs. Clarks' Deposition</u> at p. 25 [Doc. 25-6]. In fact, Mr. Clark testified at his deposition that he "probably did" receive annual account statements from the bank, but that he "never paid too much attention." <u>Mr. Clark's Deposition</u> at p. 51 [Doc. No. 25-5]. Furthermore, the Defendants have presented business records and an affidavit from Mrs. Hale illustrating that the IRA's annual statements and the 5498 forms, like the other documents that the Clarks admit

---

[1] A 1099R form is an Internal Revenue Service ("IRS") form that an individual uses to report his or her distributions from annuities, profit-sharing plans, retirement plans, IRAs, insurance contracts and/or pensions.

receiving, were stamped and sent to the Clarks' proper address. In fact, none of the Clarks' annual statements and 5498 forms were ever returned to Mrs. Hale, despite Defendants' policy that any unclaimed and undeliverable annual statements and 5498 forms be returned to the IRA's trust officer.

For these reasons, the Court finds that Defendants have established that the annual reports and 5498 forms were delivered to the Clarks. Mrs. Clark's self serving claim that she does not remember receiving these documents is insufficient to create a genuine issue of material fact.

The Clarks next suggest that Defendants wrongfully permitted Mr. Clark to make withdrawals that would deplete the IRA's principal sooner than he intended. At different parts of his deposition, Mr. Clark indicated that he believed that his IRA would either last for his entire retirement or between twenty to twenty-five years.

Notwithstanding his expectations, Mr. Clark never actually told Defendants that he expected the IRA to last for a particular amount of time. For example, when asked at his deposition, "Do you recall any conversation with bank representatives regarding how long the money you invested was scheduled to last in years if you took the distribution that you had requested? . . . Do you recall conversations like that?" Mr. Clark's Deposition at p. 59 [Doc. No. 25-5]. Mr. Clark responded, "I don't remember anything definite." Id. Mr. Clark was again asked, "Do you have a specific recollection of telling anyone at the bank that you needed this money to last you twenty, twenty-five years?" Id. at p. 60. Mr. Clark replied, "I said I need it to last as long as possible, as long as I live, you know." Id. When asked again if he actually had a specific recollection of telling this to bank employees, Mr. Clark responded, "No." Id.

Even if Defendants knew Mr. Clark wanted his IRA to last for a particular duration, the

Clarks have advanced no argument for why Defendants would be obligated to ensure that Mr. Clark's withdrawals did not deplete the IRA before that time. Under the IRA, Mr. Clark had the authority to make withdrawals. There is no evidence of an agreement between Mr. Clark and Defendants such that Defendants would stop Mr. Clark from making withdrawals from his IRA. There is also no evidence that Defendants promised Mr. Clark that they would stop him from making withdrawals before his IRA was depleted, and the Clarks have directed the court to no statements or conduct from Defendants that would indicate to Mr. Clark that his IRA would last for a specified duration.

The Clarks next contend that they were misled to believe that their withdrawals were not depleting the principal because when they talked to Mrs. Hale she made "vague assurances that the account was doing well." Plaintiffs' Opposition at p. 8 [Doc. No. 25].

The undisputed evidence establishes that Mrs. Hale's alleged statements are accurate and not misleading. Throughout the over seven years that Defendants managed the IRA, the IRA earned an average return of 5.19%, which exceeded the IRA's own benchmarks. As noted above, there is no evidence that Mrs. Hale knew Mr. Clark was withdrawing funds faster than he intended, nor is there evidence that Mrs. Hale was obligated to limit the amount and frequency of the Clarks' withdrawals from the IRA. There is also no evidence that the Clarks ever asked Defendants how long the IRA was expected to last at the chosen rate of monthly withdrawals. Under these circumstances, Mrs. Hales's assertions that the IRA was "doing well" are insufficient to create a genuine issue of material fact.

Finally, the Clarks indicate in their reply brief that summary judgment should be precluded because Mrs. Clark believes that the Defendants wrongfully withheld money from the

7

IRA. When Defendants paid Mr. Clark a withdrawal, Defendants would withhold money for taxes. In her deposition, Mrs. Clark suggested that she believed Defendants were withholding more money for taxes than what was actually paid to the government. According to the Clarks' brief, "[t]his missing money from the monthly withdrawals raises a genuine issue of material fact regarding Defendants' breach of fiduciary duty." Plaintiffs' Opposition at p. 7.

Mrs. Clark's concern that Defendants were stealing or mishandling money is belied by the evidence. In their reply brief, Defendants have presented uncontroverted evidence that the amount withheld from the IRA matched the amount paid in taxes. [Doc. No. 28, Exhs. 2(a)-2(f)].

There is no genuine issue of material fact as to whether Defendants were mishandling or withholding funds from the IRA.

## III. CONCLUSION

For the reasons set forth in the Court's ruling, Defendants' Motion for Summary Judgment [Doc. No. 21] is GRANTED.

IT IS HEREBY ORDERED that the Clarks' claims be dismissed with prejudice.

MONROE, LOUISIANA, this __2__ day of __July__, 2008.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE

8